# McCormick's Appeal.

A testator directed by his will, that his two farms, one immediately and the other after the widow's life estate, should be sold by his executors and the proceeds distributed, equally, between his children. Farm No. 1 was sold by the executors and bought by A. as trustee for the devisees. He then leased the same to B. (one of the devisees) who held it for several years, until it was again sold by A. under order of Orphans' Court. After the widow's death, B. had possession of farm No. 2 for several years, when he was made administrator d. b. n. c. t. a. of the testator's estate, and sold the said farm as the will directed. A.'s account as trustee and B.'s account as administrator were both confirmed by the Orphans' Court, without exception. Subsequently, upon the appointment of an Auditor to report distribution of the funds in the hands of both accountants, derived from the sale of the two farms, the other devisees sought to charge B.'s share of the fund with certain rents and profits, which it was claimed he owed the estate, on account of farm No. 1, during the time it was held by A. as trustee, and of farm No. 2 during the time between the widow's death and B.'s appointment as administrator :

*Held*, that this would not be done, in the said proceeding for distribution, B.'s contract of lease having been in his own right, and not as administrator, and his account as administrator having been duly confirmed by the court.

October 2d 1883. Before Mercur, C. J., Gordon, Trunkey, Sterrett, Green and Clark, JJ., Paxson, J., absent.

Appeal from the Orphans' Court of *Greene county :* Of October Term 1883, No. 55.

Appeal by Jacob McCormick et al. devisees of Robert McCormick, deceased, from a decree of said court affirming the report of an Auditor, appointed to distribute the funds in the hands of A. A. Purman, trustee in the matter of the sale of the real estate of said decedent ; and also the funds in the hands of R. P. McCormick, administrator d. b. n. c. t. a. of said decedent.

At the audit the following facts appeared ; Robert McCormick died April 29th 1869, leaving to survive him, a widow, Lavinia, a son, Jacob McCormick, and twelve other children. His real estate consisted of two farms, one called the "Home

Farm " and the other the " Krouse Farm." By his will dated February 20th of the same year, he directed that the Krouse farm should be sold and the proceeds divided among his children share and share alike, " deducting from those who have received a part of their shares, what they have received so as to make them all equal." The Home farm the testator left to his wife during her life-time, with the direction that Robert P. McCormick, his son, move into the house with his mother, and take care of her for the use of the farm, paying taxes, etc. The will further provided that after the widow's death, the executors should sell the Home farm, also, and divide the proceeds among the testator's children share and share alike.

The widow died in September 1877. The executors sold the Krouse farm, as directed, and conveyed the same by deed to the purchaser. But the latter having failed to pay the balance of the purchase-money, the farm was again sold, on a judgment for the same, by the sheriff, and bought by A. A. Purman.

Purman held the farm in trust for the devisees set out in the will, and as such trustee sold it in June 1881, under an order of Orphans' Court; and a part of the fund for distribution by the Auditor was the proceeds of this sale.

On February 18th 1875, A. A. Purman, the trustee, rented the Krouse farm, by a written lease, to R. P. McCormick, who went on the farm in pursuance of said lease, and, as alleged by him, paid rent to Purman, during the time he occupied the same.

In June 1880, upon the death or removal of the executors under the will, R. P. McCormick was appointed administrator d. b. n. c. t. a., and soon afterwards sold the Home farm as the will directed.

Jacob McCormick and the other devisees claimed before the Auditor that R. P. McCormick ought to be charged with the rents arising from the use of the Krouse farm while he had possession of it under Purman, to the amount of $600, and that he occupied the Home farm during the interval between the widow's death and the sale thereof, without making any return to the heirs, for which they claimed $600 more. They therefore asked the Auditor to marshal and adjust the estate by bringing into the distribution said $1,200, which they claimed was in R. P. McCormick's hands, and to require him to resort to the same for the payment of his share in the estate and the shares of those held by him by assignment.

In regard to these claims the Auditor reported as follows :

" It appears from evidence that R. P. McCormick did occupy said Home farm for a term of about two years without making any returns to the other heirs in the way of rents.

It is also sought to charge R. P. McCormick with rents arising from the use of the "Krouse Farm," belonging to the estate aforesaid, he having rented said farm from A. A. Purman, Esq., trustee for the heirs of Robert McCormick, deceased. With reference to both claims, first, the administrator's account by R. P. McCormick, administrator, has been filed and confirmed by the court without exception being made in any way. The same is true of the account of A. A. Purman, trustee, and no account or charge of rent or rents made in any shape in either case. As to the justice of the claim, there seems to be no question, but as to an Auditor appointed by the Orphans' Court having power to adjust such claims, under the above state of facts, seems very questionable, and with all the power directly conferred and inferred by the construction put upon the Acts of Assembly relative to the Orphans' Court, your Auditor, after a careful examination of all the cases cited by the counsel, and many others not cited, has failed to find wherein power has been delegated to him to settle such matters as the above, or wherein the essentials for making such adjustment have followed the power contemplated."

Exceptions filed to this report by Jacob McCormick, et al., were dismissed by the court, WILLSON, P. J., delivering the opinion, which was, inter alia, as follows: "There is nothing in the will of the decedent that differs from the directions usually contained in wills for the sale of real estate, and as has uniformly been held, the rents and profits of real estate, until sold, go to the heirs or persons named in the will, and if any one of them occupies real estate, he must account to the other heirs and not to the decedent's estate. While the Orphans' Court has full power to settle and distribute the estate of decedents, it cannot do so as to the estates of the living. Anything that R. P. McCormick may owe on account of rents for the use of the real estate since his father's death must be settled in some other forum than the Orphans' Court."

A decree was therefore entered confirming the Auditor's report, whereupon the exceptants took this appeal, assigning for error the decree of the court.

*A. A. Purman*, for appellants.—By the directions in the will to sell the real estate and distribute the proceeds, it was converted into personalty, from the date of the testator's death: Allison *v.* Wilson, 13 S. & R. 332; Dundas's Appeal, 14 P. F. S. 330; Bell's Appeal, 16 P. F. S. 503. The effect of this was to render the executors accountable for the management of the real estate, or, in other words, for its rents and profits: Silverthorn *v.* McKinster, 2 Jones 72; Tucker *v.* Horner, 10 Phila. 124 This accountability, of course, descended to the administrator,

d. b. n. c. t. a. : Drenkle *v.* Sharman, 9 W. 483 ; Richardson *v.* Id., 9 Barr 431 ; Carter *v.* Trueman, 7 Barr 315 ; Acts of March 12th 1800, §§ 2, 4, and February 24th 1834, § 67. It is plain, therefore, that the Orphans' Court had jurisdiction to marshal the rents and profits in this case, and adjust the rights and equities between the co-devisees : Barklay's Estate, 10 Barr 390 ; Scott on Intestates 55, 325 ; Redfield on Wills 352 (2d. ed.) ; 2 Williams on Ex'rs 1457 ; Thompson's Appeal, 6 Wright 345.

*Donley* (with whom were *Barb & Inghram*), for appellee.— The doctrine of conversion does not apply to this case. R. P. McCormick never occupied either farm as administrator, c. t. a. In the case of the " Krouse Farm," he was lessee of Purman ; and the heirs should have excepted to the latter's account as trustee. The " Home Farm " McCormick sold soon after his appointment as administrator, and his account as such was confirmed without exception. The Orphans' Court is limited in its jurisdiction to the powers given by the statutes, and it has not the general powers of a court of equity : Weyand *v.* Weller, 3 Wright 443 ; McCullough's Appeal, 2 Jones 197 ; Torrance *v.* Torrance, 3 Smith 505 ; Ainey's Appeal, 11 W. N. C. 568. It has no jurisdiction of a controversy between co-heirs as to matters which have arisen since the decease of their ancestor; nor has it the power anywhere conferred to settle questions of rent between co-heirs arising since their ancestor's death. The rents belong to the heirs, and not to the estate or the administrator : Landis' Estate, 2 Phil. 217.; Burnell's Estate, 9 W. N. C. 334 ; Haslage *v.* Krugh, 1 Casey 97.

The opinion of the court was delivered October 15th 1883. PER CURIAM.—When the "Krouse Farm" was purchased by Purman it passed out of the hands of the appellee. Thenceforth Purman held it in trust for the heirs. Any contract which the appellee afterwards made with Purman for renting the land was in his own right, and not as administrator. He held it under a written lease, and according to its terms and conditions. Soon after his appointment as administrator he sold the "Home Farm." He filed an account of his entire administration. It was confirmed, and the Auditor appointed to distribute the fund adjudged to be in his hands. We see nothing in the whole evidence to authorize the court in this distribution to charge the appellee with any greater sum than that fund.

Decree affirmed and appeal dismissed at the costs of the appellant.